UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

WAYNE JACOBS,

    Debtor.

Case No. 11-51715
Chapter 7 Proceeding
Hon. Walter Shapero

_____/

STUART A. GOLD, Trustee,

    Plaintiff,

v.

TIMOTHY JOHN JACOBS and
MARILYNNE E. JACOBS,

    Defendants.

Adv. Pro. No. 11-05931

_____/

## **TRIAL OPINION**

### I. INTRODUCTION

The matter before the Court is a preference action initiated by the Chapter 7 Trustee ("Plaintiff") against Timothy and Marilynn Jacobs ("Defendants"). The Plaintiff seeks (a) avoidance pursuant to 11 U.S.C. § 547(b) of an alleged preferential transfer of $33,606.42 made by the Debtor to the Defendants and (b) a money judgment against the Defendants pursuant to 11 U.S.C. § 550. The parties submitted this proceeding for disposition by the Court on the basis of stipulated facts and exhibits lieu of a formal trial, and they have submitted the required trial briefs.

## II. JURISDICTION

This Court has subject matter jurisdiction over this bankruptcy case and this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. § 157 (b)(2)(F), as it is a proceedings to determine, avoid, or recover a preference.

## III. STIPULATED FACTS

In the Joint Final Pretrial Order, the parties stipulated to the following facts:

(1) On April 25, 2011 ("petition date"), Wayne Jacobs ("Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the United States Code.

(2) Stuart A. Gold is the duly appointed Trustee of the Debtor's Chapter 7 bankruptcy estate.

(3) The Defendants are the Debtor's parents and therefore qualify as insiders pursuant to 11 U.S.C. § 121(31)(a)(I).

(4) The Defendants reside at 18388 Glendale St., Roseville, Michigan 48035.

(5) On May 25, 2009, the Debtor and Defendants executed a writing which states, "This is an agreement between Wayne Jacobs, and Tim and Marilynn Jacobs. The agreement says that any and all Worker Compensation settlements that Wayne Jacobs receive be turned over to Tim and Marilynn Jacobs for amounts up to $50,000.00 for the care of his family for the time before and up to the settlement" (the "Writing").

(6) On March 1, 2011, a Redemption Order was entered awarding the Debtor $33,506.42 on account of his worker's compensation claim against the Debtor's former employer ADP Totalsource.

(7) On March 31, 2011, Specialty Risk Services, LLC, on behalf of ADP Totalsource's insurance company, issued a check for $33,506.42 to the Debtor (the "Check").

(8) On April 6, 2011, the Debtor endorsed the Check and transferred it to the Defendants (the "Transfer").

(9) On April 6, 2011, the defendant Marilynn Jacobs endorsed the Check and deposited it into her Chase bank account, account number ending 9753.

(10) On June 14, 2011, the Debtor amended his response to question 3 "Payments to Creditors," in his statement of financial affairs, to disclose the Transfer.

(11) The Debtor, his wife, and one or more of his children lived with the Defendants for a period beginning approximately five years prior to the petition date up through the petition date.

(12) The Debtor was insolvent on the date of the Transfer.

(13) The Transfer enabled the Defendants to receive more than they would have received had the Transfer not been made and had Defendants instead received payment of their debt under the provisions of Chapter 7 of the Bankruptcy Code.

## IV. DISCUSSION

### A. Whether the Transfer May be Avoided as a Preference Pursuant to 11 U.S.C. § 547(b)

11 U.S.C. § 547(b) states:

Except as provided in subsection (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

To avoid a particular transfer, the Plaintiff must prove each of the elements of § 547(b) by a preponderance of the evidence. 11 U.S.C. § 547(g); *In re Southern Air Transport, Inc.,* 511 F.3d 526, 534 (6th Cir. 2007).

The Defendants have stipulated to the presence of the following elements: (1) § 547(b)(3) (that the transfer was made while the Debtor was insolvent); (2) § 547(b)(4) (that the transfer was made within the relevant insolvency period); and (3) § 547(b)(5) (that the transfer enabled the Defendants to receive more than they would have received had the transfer not been made and had the Defendants instead received payment of their debt under the provisions of Chapter 7 of the Bankruptcy Code). Thus, the only remaining issues are: (a) whether the Defendants are or were creditors under § 547(b)(1); and (b) whether the transfer was made for or on account of an antecedent debt owed by the Debtor before the transfer under § 547(b)(2).

The Plaintiff argues that (1) the Defendants are or were creditors of the Debtor because the Debtor is indebted to the Defendants by reason of the written statements contained in the Writing; and (2) the Transfer was made on account of an antecedent debt because the Defendants' claim arose when the parties entered into the agreement as memorialized by the Writing, and thus prior to the date of the transfer. The Defendants argue that the Transfer was not made on account of an antecedent debt because the Writing is unenforceable due to failure of consideration under the pre-existing duty rule. The Defendants reason that, because the Debtor had a pre-existing duty to support his family, his promise to pay the Defendants was for that as to which he was already bound (to support his family) and thus did not constitute a valid or sufficient consideration for a contract.

4

11-05931-wsd    Doc 29    Filed 03/22/13    Entered 03/22/13 15:11:01    Page 4 of 11

11 U.S.C. § 101(10)(A) defines the term "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." The term "claim" is defined under § 101(5), which states:

The term "claim" means –

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Congress intended by this language to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).

In this case, the Debtor promised to pay the Defendants the proceeds of his expected worker's compensation award, up to $50,000.00, in exchange for the Defendant's providing support for the Debtor and his family "before and up to" his receipt of the award. That agreement was memorialized in the Writing signed by both the Debtor and the Defendants on May 25, 2009. The Defendants thereby obtained a claim against the Debtor contingent upon the Debtor obtaining a worker's compensation award or settlement at some point in the future. The Debtor did in fact receive such an award and he transferred all of it to the Defendants. The Debtor's mere promise to pay over the settlement proceeds to the Defendants is a "claim" against the Debtor, and it is immaterial whether that claim was contingent, <u>disputed</u>, legal or equitable given the broad definitional statutory language. The defense of non-enforceability, like any other potential basis for successfully "disputing" the claim ,does not preclude it from constituting a"claim." Because the Defendants have a claim against the Debtor, they are creditors of the Debtor.

5

Section 547(b)(2) requires that a plaintiff prove that the transfer was made on account of an "antecedent debt" owed by the Debtor before such transfer was made. The Bankruptcy Code does not define the term "antecedent debt." In the absence of a statutory definition, a court construes a term according to its ordinary or natural meaning. *FDIC v. Meyer*, 510 U.S. 471, 476 (1994). The Bankruptcy Code defines the word "debt" as a "liability on a claim." 11 U.S.C. § 101(12). *Black's Law Dictionary* (8th ed. 2004), defines "antecedent" as: "Earlier; preexisting; previous" and defines the term "antecedent debt" in the bankruptcy context as: "A debtor's prepetition obligation that existed before a debtor's transfer of an interest in property."

As noted, the Defendants argue that there was no antecedent debt because the Debtor's agreement to pay is unenforceable due to failure of consideration under the pre-existing duty rule, i.e.: because the Debtor had a pre-existing duty to support his family, his promise to pay the Defendants for that which he was already bound to do (to support his family) did not constitute a valid or sufficient consideration for the agreement. *See Yerkovich v. AAA,* 461 Mich. 732, 740, 610 N.W.2d 542 (2000) (an essential element in a contract claim is legal consideration). "Under the preexisting duty rule, it is well settled that doing what one is legally bound to do is not consideration for a new promise." *Id.* at 740–741, 610 N.W.2d 542. Such a contract would appear to fail for lack of consideration. *Puett v. Walker,* 332 Mich. 117, 122, 50 N.W.2d 740 (1952).

The pre-existing duty rule does not apply to the facts of this case. Parents do have a duty under Michigan common law to take care of their children who have not yet obtained the age of majority. *In re Stephenson's Estate*, 216 Mich. 320 (1921). However, if one were to accept the Defendants' argument and carry it to its logical and quite analogous conclusion, one might have to question the legal status of agreements by parents to compensate their children's baby sitters,

nannies, nurses, tutors, or other types of caregivers or persons whose activities might very well be fairly considered as part of the support function or responsibility of the parents. To pay another to assist one in carrying out one's own parental duties (whether because of the inability of the parent to do so financially or otherwise, or not) does not deprive the paid for services of their value or from being considered sufficient legal consideration for the debt arising from the agreement to pay. Furthermore, if one looks at this proceeding from the perspective of the consideration for the Debtor's promise being the Defendants' agreement to take care of the Debtor's family for the indicated period, there is valid consideration from that standpoint. The Defendants' duty of support of the Debtor, their son, only extended for the period of his minority. *See In re Stephenson's Estate*, 216 Mich. 320 (1921). It appears to be undisputed in this case that, at all critical times, the Debtor was of age. Given that fact, plus what appears to be the law that, even if he wasn't of age, the legal duty of support would not extend to the Debtor's wife and children (and forgetting that it appears that at some point prior to the filing of the bankruptcy case the Debtor was divorced), it becomes apparent that the Defendants' promise was not one for which they already had some legal duty. Thus, it was appropriate consideration to support the existence of a "debt," and indeed an antecedent one, for purposes of this case.

The Defendants also argue that parents of children cannot bargain away their duty to support their children and that the Debtor's attempt to do so is unenforceable. The Defendants cite *Wiersma v. Wiersma*, 241 Mich. 565 (1928) in support of that argument. In that case, the plaintiff and the defendant had divorced. The plaintiff was awarded custody of their two minor children and, under the terms of the divorce decree, the defendant was ordered to pay $7 per week for the support and maintenance of the children until the court ordered otherwise. The defendant filed a petition for a modification of the divorce decree to relieve him from making

7

those payments. The defendant claimed that he had the right to seek a modification based on an alleged written agreement with the plaintiff, which had been executed before the divorce decree was signed and had been annexed to the petition, in which the plaintiff agreed that the weekly payments should cease upon her remarriage. The Michigan Supreme Court agreed with the analysis of the trial court, which said:

> The law of this state is settled that the parents may not bargain away the children's welfare, the children's rights, that the court may always do what seems reasonable and necessary to protect the children's rights, and having in mind that policy or rule, the court made a special effort in this particular case to see to it that these parents should not do that very thing. They attempted to do it then. Failing in the attempt then they are now attempting to do it, or one of them is attempting now to circumvent an order of the court that was made for the purpose of protecting the welfare of these children. Well, the court refused to permit them to do it, and the court must necessarily refuse to permit them to do it now.

Here, the Debtor did not bargain away his children's welfare or their rights, nor did he attempt to bargain away the duty to support or care for them. That legal duty remained with him and his giving away funds which could have been used for that purposes does not negate or eliminate that duty. Rather, he made an agreement with his parents that allowed him to support and care for his children himself while his parents provided them with a place to live and paid for almost all of their living expenses until the Debtor received his worker's compensation award. Therefore, the Court concludes that the preexisting duty rule does not apply to the facts of this case and that the agreement between the parties is enforceable.

As noted, the Defendant's claim arose at that time the Debtor promised to pay the Defendants the proceeds of his expected worker's compensation award in exchange for the Defendant's providing support for the Debtor and his family until he received the award. That agreement was memorialized in the Writing on May 25, 2009. The Defendants allowed the Debtor and his family to live with them, almost entirely expense free, during the approximately

8

five years prior to the petition date. The Redemption Order awarding the Debtor $33,506.42 on account of his worker's compensation claim against ADP Totalsource was entered on March 1, 2011. On March 31, 2011, Specialty Risk Services, LLC, on behalf of ADP Totalsource's insurance company, issued a check for $33,506.42 to the Debtor. The Debtor transferred those funds to the Defendants on April 6, 2011. The claim and the debt clearly arose before the transfer was made and, therefore, the Court concludes that the transfer was made on account of an "antecedent debt" owed by the Debtor to the Defendants.

Lastly, the Defendants argue that the Plaintiff has not met his burden of proving that the Defendants cared for the Debtor and his family because there is no evidence before the Court of any actual expenditures made by the Defendants on behalf of the Debtor and his family. That argument must fail. The stipulated to facts and exhibits clearly support a finding that the Defendants provided the support and care to the Debtor and his family as bargained for in the Writing. Specifically, (1) paragraph "m" of the Stipulated Facts section in the Joint Final Pre-Trial Order states: "The Debtor, his wife and one or more of his children lived with the Defendants for a period beginning approximately five years prior to the petition date up through the petition date."; (2) on his Schedule J, the Debtor lists only one expense, $200 per month for food, and notes that "Debtor and kids live with his parents and they pay all other expenses."; and (3) in response to question 4 on his Statement of Financial Affairs, entitled "Payments to Creditors," the Debtor states that he transferred $33,526.00 to his parents and notes: "Debtor gave them his work comp money for taking care of him and his kids last couple years." The Defendants have not disputed, questioned, or otherwise addressed those sworn statements. Accordingly, the Court concludes that there is adequate evidence that the Defendants did in fact provide support for the Debtor and his family during the relevant time period.

B. <u>Recovery of the Transfer Pursuant to 11 U.S.C. § 550</u>

Pursuant to 11 U.S.C. § 550(a), "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of the such property, from - (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

It is undisputed that the Defendants are the initial transferees of the Transfer and the Court has concluded that the Transfer constitutes a preferential transfer under § 547. Accordingly, the Plaintiff is entitled to recover the $33,506.42 from the Defendants pursuant to § 550(a).

V. <u>CONCLUSION</u>

For the reasons set forth herein, the Court concludes that (1) the Debtor's transfer of the $33,526.42 in worker's compensation proceeds to the Defendants constitutes a preferential transfer and that the transfer is avoidable by the Trustee pursuant to § 547, and (2) the Plaintiff is entitled to a money judgment in the amount of $33,526.42 pursuant to § 550(a). Plaintiff shall prepare and present an appropriate order.

.

**Signed on March 22, 2013**

                                                                         /s/ Walter Shapero
                                          **Walter Shapero**
                                          **United States Bankruptcy Judge**